FREDERICKA LUCIAN, as Executrix of the estate of LEONORA FORNEY BURKHART, Deceased, v. THE SOUTHERN OHIO SAVINGS BANK & TRUST COMPANY, as Executor of the Estate of WILLIAM S. BURKHART, Deceased.

23 So. (2nd) 674            January Term, 1945
January 30, 1945                En Banc
On Rehearing July 20, 1945
On Further Rehearing October 16, 1945

A. C. Franks, for appellant.

Loftin, Anderson, Scott, McCarthy & Preston, for appellee.

TERRELL, J.:

On consideration of this case June 6, 1944, certiorari was denied. 18 So. (2nd) 27. When the mandate went down, the cause was heard by the Chancellor on decree pro confesso, which defendant moved to vacate and tendered an answer. The Chancellor promptly denied the plaintiff's application for a final decree based on the decree pro confesso, vacated and set aside the decree pro confesso and granted the defendant's application to file her answer. Defendant then announced that she had no testimony to offer except the record and pro-

ceedings in Leonora Forney Burkhart v. William S. Burkhart, decided June 10, 1941. The Chancellor found that the decree in the latter case was void for want of service on Burkhart and entered final decree as prayed for in the bill. The instant appeal is from the final decree.

Counsel are at variance as to questions presented. Appellant contends that appellee should not have been permitted to intervene that he should have been permitted to prove his bill and that Burkhart's conduct amounted to a general appearance. The appellee contends on the other hand that the whole question turns on the question of service on Burkhart and that that question is concluded against appellant by Pennoyer v. Neff, 95 U.S. 714, 5 Otto 565.

In Rorick v. Stilwell, 101 Fla. 4, 133 So. 609, we held that any motion involving the merits or in recognition of the suit amounted to a general appearance regardless of the movant's intention. A majority of the court are of the view that under the rule in Rorick v. Stilwell, supra, Burkhart's conduct amounted to a general appearance. When all is said, the point in the case is to avoid a judgment predicated on a prenuptial contract, a separation agreement, and a divorce decree. No case in the history of this Court has been here so many times. We think every element of service was implicit in the litigation. Pennington v. Fourth National Bank of Cincinnati, 243 U.S. 269, 37 Sup. Ct. 282, 61 L. Ed. 713.

Reversed on authority of Rorick v. Stilwell, supra, for further proceedings.

CHAPMAN, C. J., BUFORD and THOMAS, JJ., concur.

BROWN and SEBRING, JJ., dissent.

ADAMS, J., not participating.

THOMAS, J., dissenting:

Upon a re-study of the record in this case I feel impelled to recede from my concurrence in the opinion prepared by Mr. Justice TERRELL. In the case of Burkhart v. Burkhart, 144 Fla. 168, 197 So. 730, and 144 Fla. 176, 198 So. 21, it was held that the special appearance and motion to dismiss the bill of complaint did not constitute a general appearance. Although I did not participate in that decision which was apparently based on the opinion in Bowmall v. Bowmall, 127 Fla. 747, 174

So. 14, I was familiar with the point presented and held the conviction that a contrary ruling should have been made for the reasons later given in an opinion prepared by Mr. Justice SEBRING, Aldrick v. Aldrich, 153 Fla. 856, 16 So. 2nd 47, to which I agreed, and in Rollins v. Rollins, 155 Fla. 83, 19 So. 2nd 562, which I wrote. For the same reasons I agreed only to the conclusion in Burkhart v. Circuit Court, 146 Fla. 457, 1 So. 2nd 872. The decisions in the Aldrich and Rollins cases were contrary to the announcement in Bowmall v. Bowmall, supra.

Nevertheless, I now feel that, despite these views, an outright affirmance of the decision of the lower court should be entered because the rule announced in the opinion first above cited had become the law of the case and should be followed therefore in this litigation.

ADAMS, J., concurs.

ON FURTHER REHEARING

BROWN, J.:

My attention has been called to certain factual errors contained in my former opinion filed in this case on July 20th, 1945, originally written as a dissenting opinion, and the same has been withdrawn with the permission of the Court, and, with due apologies, this rewritten opinion is submitted in its stead.

This is an appeal from a final decree rendered by the Circuit Court of Dade County on June 19, 1944, in favor of the plaintiff, appellee here, as executor of the estate of William S. Burkhart, deceased, which decree annulled and set aside a former decree of said court rendered on June 10, 1941, in the case of Leonora Forney Burkhart v. William S. Burkhart, except in so far as said former decree dissolved the bonds of matrimony between the parties. The defendant, Fredericka Lucian, as executrix of the will and estate of Leonora Forney Burkhart, took this appeal. It appears from the pleadings and proof that William S. Burkhart died Nov. 13, 1941, and Leonora Forney Burkhart died May 21, 1943. This suit is between their respective executors.

The bill in the case now before us was filed Nov. 19, 1943, and alleges that for a long period prior to his death William S. Burkhart had been a citizen and resident of Ohio, but that

on January 11, 1939, his wife, Leonora Forney Burkhart, filed in the Circuit Court of Dade County, Florida, a bill for divorce against him which prayed for other relief also, a copy of which bill was attached, in which it was alleged that each of the parties was, and had been for more than ninety days, a resident of Dade County, Florida, and that the defendant was temporarily residing or in business in Cincinnati, Ohio, and residing in Burkhart's Sanatarium, Reading, Ohio, but that it was not alleged in said bill, or by sworn affidavit, that any basis existed for constructive service of process against Burkhart as a resident of Florida under the applicable statute, 4895 C.G.L. 1927, 48.04 F.S. 1941. The bill in the case now before us alleges that it was not true that William S. Burkhart was a resident of Florida, and that this was shown in the divorce case by the Master's report to whom the matter was referred in connection with the defendant Burkhart's special appearance and motion to quash service, which is referred to in 144 Fla. 168, 197 So. 730; 144 Fla. 176, 198 So. 21. It is alleged in the instant bill that Burkhart was and always had been a resident of Ohio. The chancellor sustained this allegation by his decree in the instant case. The bill further alleges that in the wife's suit for divorce, upon plaintiff's praecipe, order of publication was made by the clerk on April 1, 1939, and duly published during that month, in a form applicable to non-resident defendants, and gave the defendant's address as: "Care of Burkhart's Sanatarium, Reading, Ohio." It is further alleged that at no time during the progress of the divorce case was there ever filed any amendment to the bill of complaint, or any supplemental bill. This allegation is sustained by the record.

It is further alleged in the instant bill that on May 1, 1939, the defendant Burkhart, appearing specially for that purpose, filed a motion to quash the order for constructive service and to dismiss the plaintiff's petition upon the ground that the court had not acquired jurisdiction over his person, or over the subject matter of the suit, and that plaintiff had not resided in Florida for ninety days before filing her bill. The chancellor, after appointing a master to take testimony and submit a report, on September 15, 1939, overruled this motion and adjudged that it constituted a general appearance and re-

quired defendant to answer by the November rule day, and taxed the Master's fee and costs, amounting in all to $414.50 against him. That on appeal to the Supreme Court, this court held that the defendant's said special appearance and motion to quash did not constitute a general appearance so as to give the trial court jurisdiction of the person of the defendant husband; that in this respect the lower court's order was reversed. That allegation is correct. See Burkhart v. Burkhart 144 Fla. 168, 176; 197 So. 730, 198 So. 21.

But in the decision just cited, this court held that "as the court has jurisdiction of the parties as otherwise held by the chancellor, the decree is in other respects affirmed." The only adjudications in said order of the chancellor, entered September 15, 1939, other than that the special appearance and motion to quash amounted to a general appearance, were to confirm and approve the Master's report, which report held that the court "had jurisdiction of the parties and the subject matter;" that Mrs. Burkhart was a bona fide resident of Florida and had been for more than ninety days preceding the filing of her bill; and that the "matrimonial domicile" of the parties was in Florida, (for somewhat conflicting definitions of "matrimonial domicile" see 26 Words & Phrases, 729). The order also required the defendant Burkhart to pay the Master's fee of $250.00 and the reporting of the testimony in behalf of the plaintiff, $164.50. The effect of this holding by this court, in 144 Fla. 168, 176, 197 So. 730, 198 So. 21, was that the defendant's special appearance and motion to quash did not amount to a general appearance, but that constructive service on the husband by publication and plaintiff's residence in Florida for considerably more than ninety days gave the court below jurisdiction to proceed with the pending divorce suit, and left standing the chancellor's order taxing against defendant the costs which had accrued in connection with his special appearance and motion to quash. Our above cited decision may also have amounted to an approval of the lower court's confirmation of the Master's report as to the "matrimonial domicile" being in Florida, whatever that may mean (see 17 Am. Jur. 281-2), and that the lower court had jurisdiction "of the parties and the subject matter" in so far as that jurisdiction could be exercised without personal service

upon the defendant or personal appearance by him. Of course, the trial court had jurisdiction in the case to grant a divorce on constructive service by publication. A suit for divorce alone is unquestionably to suit *in rem*—the material status of the citizen constituting the *res*. 17 Am. Jur., 422, et seq.

On November 4, 1940, upon plaintiff's praecipe, the clerk entered a decree pro confesso against the defendant Burkhart, based upon the constructive service above alluded to and defendant's failure to answer the bill as required by an order of the Circuit Court, entered September 27, 1940, requiring the defendant to file an answer on or before October 7, 1940, and also entered judgment against defendant for the costs herein above mentioned which were assessed against him in the order of September 15, 1939, in the total amount of $414.50.

The bill now before us further alleges that at no time during the progress of the cause, which ripened into a final decree under attack, was personal service of process made upon William S. Burkhart, nor was any attempt made so to do; that at no time did he appear generally or otherwise than specially, as above outlined, nor did he file any other motion or pleading or do any act to submit himself to the jurisdiction of the court. That at no time during the progress of the cause were any properties, monies or credits owned (or alleged to be owned) by the defendant, seized, impounded or sequestered, nor was any effort made to bring any such property into the jurisdiction of the court. That no writ of attachment nor writ of garnishment, legal or equitable, was ever issued for any property, money or credits of the defendant, nor was any such property described in the bill of complaint (or any other instrument) nor was any such relief asked. That notwithstanding all this, the Judge of the Circuit Court of Dade County, on June 10, 1941, entered a final decree (copy attached) by the terms of which it was ordered and decreed, in substance that: (1) the court had jurisdiction of the parties and the subject matter; (2) the decree pro confesso was confirmed; (3) report of the special master was confirmed; (4) the bonds of matrimony existing between the parties were dissolved and divorce a vinculo matrimonii was granted; (5)

that the defendant pay $5,000 for plaintiff's attorney's fees; (6) that he pay the defendant $375.00 per month as permanent alimony; (7) that plaintiff have and recover $31,430, balance due her for monies advanced to the defendant and $10,940 interest thereon, making a total of $42,370, for which execution was directed to issue; (8) that costs amounting to $2,965.53 be taxed against the defendant; (9) that a certain Pontiac automobile registered in the name of the defendant was the plaintiff's property; (10) that a Master's fee of $500 be paid by defendant; (11) that defendant pay $18.00 for reporting the testimony, and (12) that the question of the specific performance of a prenuptial agreement be reserved for determination on the defendant's death. These allegations of the present bill are supported by the record.

Appellee's bill alleged that said final decree of January 10, 1941, was void and of no effect because: (1) there was no personal service of process on the defendant and no voluntary appearance by him; (2) there was a total failure to secure valid constructive service on defendant as an alleged resident of Florida as required by the applicable statute; (3) that the record shows that the plaintiff was not a resident of Florida for ninety days next preceding the filing of her bill; (4) that in so far as the decree was, or purported to be one in personam, it violated both the State and Federal constitution in that it deprived the defendant of his property without due process of law; (5) that there was no seizure, attachment or garnishment of any property of the defendant so as to give the court jurisdiction to enforce a money decree against him, or a judgment in rem, and (6) there was no basis in the pleadings for the rendition of any money decree against the defendant for the items named in the decree, or in any sum, and particularly for the sum of $42,370, specified in paragraph 7 of the decree, which was not mentioned or described in the bill or any other pleading, and was wholly unconnected with the marital res, or the suit for divorce, money or counsel fees.

We might observe right here that as to this last item of $42,370, for which no predicate was laid in the pleadings, the decree of June 10, 1941, was absolutely void. The jurisdiction of the court had not been invoked as to this item; nor could it

have been invoked without personal service on defendant. See Lovett v. Lovett, 93 Fla. 611, 112 So. 768.

It is further alleged that Leonora Forney Burkhart, in her life time, and after her death her said executrix, have attempted to enforce the invalid decree, and pretended rights accruing to her thereby, in three separate actions brought against this plaintiff as executor of the estate of William S. Burkhart, in the courts of Ohio, which are still pending; that plaintiff cannot close the estate nor make any distribution of the assets until the validity *vel non* of the said decree of the Circuit Court of June 10, 1941, is definitely and finally decided, and that the said Ohio Courts are awaiting a final expression from the Florida courts on this question; that while the force and effect of said decree had been challenged in said Circuit Court of Dade County and in the Supreme Court of Florida and its validity questioned from the time of its entry, no direct decision thereupon has been handed down by any court of complete jurisdiction, and that plaintiff has been put to almost continual harassment and substantial expense by defendant's efforts to enforce said void decree.

The prayer is that the court enter a declaratory decree, adjudicating the decree of June 10, 1941, to be utterly void; that defendant be temporarily enjoined from attempting to enforce said decree, and that on final hearing the injunction be made permanent. Temporary injunction was granted by the court, and was made permanent in the final decree appealed from.

On November 16, 1943, the defendant executrix filed a motion to dismiss the bill on various grounds. One of them was that no grounds are shown for a declaratory decree; but as we see it, the prayer of the bill goes beyond that. It directly attacks the validity of the decree, and seeks to enjoin its enforcement. Furthermore, under the statute, every bill of complaint shall be considered to pray for general relief. Section 63.28 Fla. Stats. Annotated. Another is that the bill does not show that the plaintiff executor has any bona fide interest in the subject matter of this litigation, but another ground, somewhat contradictory, is that the plaintiff, as shown by the bill, is in privity with the original defendant and bound

in law by the final decree, which was not appealed from. However, aside from this, the bill shows that the estate of which plaintiff is executor is being threatened with depletion by litigation based on the money judgment contained in the decree of June 10, 1941, here attacked, and that it is plaintiff's duty to attack such decree because plaintiff is advised that it is void for want of jurisdiction. The main ground of the motion to dismiss appellee's bill, as evidenced by appellant's brief and oral argument, is that this plaintiff, as executor of the estate of William S. Burkhart, is bound by the former decisions of this court in the case of Burkhart v. Burkhart, holding, so it is alleged, that the Circuit Court of Dade County had jurisdiction of the parties and of the subject matter without personal service of process, and that the questions raised by the bill are res judicata as against Burkhart and his executor.

On November 20, 1943, the motion to dismiss was denied and the defendant executrix later tendered an answer, which was later permitted to be filed, and which denied that the decree of June 10, 1941, was entered in contravention of the constitutional rights of William S. Burkhart, and also denied several other allegations of the appellee's bill. The answer alleges that the Master did not find that Burkhart was a resident of Ohio, but that he did find that the marital domicile of the parties was in Dade County, Florida and that the court had jurisdiction of the parties and of the subject matter by virtue of the marital domicile of the parties; and that the defendant waived any defects in the order for and process of service upon him by publication by filing his special appearance and motion to quash and motion to dismiss, which motions the court denied upon the ground that the Master had adjudicated the marital domicile of the parties to be within the jurisdiction of the court. The answer admits that the chancellor adjudicated that defendant's special appearance and motions amounted to a general appearance and that the Supreme Court reversed the case in so far as it related thereto, but denies that the Supreme Court reversed the chancellor's confirmation of the Master's report which held that the trial court had jurisdiction of the parties and the subject matter by

reason of the "marital res" being located within the jurisdiction of the Court; citing Burkhart v. Burkhart, 144 Fla. 168, 176; 197 So. 731, 198 So. 21.

The answer further alleges that when, in January, 1941, William S. Burkhart presented in the Supreme Court suggestion for writ of prohibition, he thereby waived service of personal process and submitted himself to the Courts of this State, and alleges that this Court then adjudicated that the Circuit Court had jurisdiction to enter orders in the cause. A copy of the proceedings and of this court's decision and opinion, filed March 11, 1941, is attached to the answer. See 146 Fla. 457, 1 So. (2nd) 872. (We will refer to this decision later.)

The answer erroneously alleges that the courts of this State have adjudicated that Burkhart's residence was in Dade County, Florida, and also that it is not necessary for the courts of this State to adjudicate what effect this decree might have if sued on in a foreign state. It is also denied that the courts of the State have not directly decided-upon the validity of the decree attacked; that this Supreme Court has held that the decree is not void, and that if Burkhart had any rights therein or in the properties levied upon, he should have taken an appeal therefrom. As to this last allegation, we might interpolate that Burkhart probably did not care to appeal; he might have been advised that the decree was not valid in so far as it was a money decree, that an appeal therefrom might be construed as a personal appearance, and furthermore he might not have objected to the divorce part of it, because, as this record shows, he sued for and secured a divorce in Ohio.

The answer also alleges that pending the appeal of W. S. Burkhart in the case of Burkhart v. Burkhart, and appellee's motion to dismiss the appeal, 141 Fla. 450, 193 So. 434, 141 Fla. 724, 193 So. 834; 144 Fla. 176, 197 So. 730, 198 So. 21, (which last appeal was taken from the chancellor's order of September 15, 1939, holding that Burkhart's special appearance amounted to a general appearance) counsel for appellee Leonora F. Burkhart filed a petition for temporary

alimony and counsel fees in the Supreme Court; that this court assumed jurisdiction of said cause by its order of October 9, 1939, (which ordered that said cause be referred to Hon. Arthur Gomez one of the Circuit Judges of Dade County, to take testimony on the faculties of the parties and report his findings, with recommendations thereon to this Court) and that on February 13, 1940, this court again exercised its jurisdiction by an order referring the question of alimony pendente lite and attorney's fees to said Hon. Arthur Gomez.

We observe right here that this allegation misconstrues the opinion and order of this Court, dated February 13, 1940, as will be shown by the report thereof in 141 Fla. 724, 193 So. 834. It was stated by us in that opinion that Judge Gomez had made his report and recommendations, which are quoted, with reference to allowance of temporary alimony, attorney's fees, and the costs incident to the hearing before him. In the opinion, this court said that "the first question which we may be required to determine is, whether or not the court below acquired jurisdiction of the defendant; and, therefore, whether or not either the court below or this Court has jurisdiction to enter any order requiring the appellant here to pay the defendant any sum for alimony or attorney's fees." The order was that no adjudication would be made in this regard "at this time, but will defer the same until such time as the appeal shall have been disposed of on the question of jurisdiction." This was done in opinions and decisions of this court handed down on August 2, 1940, and October 4, 1940, which are reported in 144 Fla. 168, 197 So. 730, and 144 Fla. 176, 198 So. 21, which we will discuss later. On August 2, 1940, another order was made by one of the divisions of this Court, to the effect that a ruling on the wife's application for temporary alimony, suit money and counsel fees would be deferred to a subsequent date, in view of the fact that a receipt by the appellee wife had been presented to this court for consideration in connection therewith which showed that on April 30, 1940, she had received "from William S. Burkhart and/or William S. Burkhart, Inc., an Ohio Corporation, $10,075.00 in full satisfaction of all claims or demands she had growing out of the ante-nuptial agreement of June 14, 1923," and a certain

alimony award made to her by the Common Pleas Court of Hamilton County, Ohio. See Burkhart v. Burkhart, 145 Fla. 547, 200 So. 694.

Finally, the answer of Mrs. Burkhart alleges that this court exercised jurisdiction over the parties and the subject matter of this litigation by its order of October 25, 1940 (not reported) which recited that "This cause coming on for consideration on the petition of counsel for appellee for temporary alimony, suit money and temporary counsel fees incurred in the court below and in this court, it is ordered that appellant be and is hereby required to pay to appellee the sum of $300.00 for her counsel fees in this court for their services in representing the appellee on this appeal in this Court; it is further ordered that all further relief prayed for in said petition be and the same is hereby denied without prejudice to proceed in regard thereto in the lower court as the parties may be advised." The certificate of the Clerk of this Court, following this order in the transcript, states that the order was entered on *October 9, 1939.* But regardless of the date of the order, it could only have referred to allowance of a counsel fee to appellee's counsel for representing her in this court in resisting the appeal of W. S. Burkhart from the order of the lower court holding that his special appearance and motion to quash and dismiss amounted to a general appearance. This is an appellate court. We do not consider that this order could confer any jurisdiction upon the lower court over the person or property of appellant William S. Burkhart which it did not already possess. The appeal referred to was finally disposed of by this court by its order and judgment of October 4, 1940. See 144 Fla. 176. 198 So. 21. Nor do we consider that the decisions of this court in Tallentire v. Burkhart, 150 Fla. 137, 7 So. (2nd) 326 and Tallentire etc. v. Burkhart, 153 Fla. 278, 14 So. (2nd), have any bearing on this case.

Upon petition for review by certiorari under our rule 34, to test the sufficiency of plaintiff's bill to withstand the motion to dismiss in the instant case, which motion was denied by the chancellor below, this court denied the petition, by a 4 to 3 decision, thereby indicating that the motion to dismiss the bill was properly denied. See Lucian, Executrix, v. Southern

Ohio Savings Bank & Trust Co., as Executor, 154 Fla. 442, 18 So. (2nd) 27.

On final hearing in this present case, the court denied plaintiff's application for a final decree on the decree pro confesso theretofore entered by the clerk, and vacated said decree pro confesso, and granted leave to the defendant executrix to file the answer tendered to the court (which answer we have alluded to above) and thereupon the defendant through her counsel announced that she had no testimony to offer in said cause except the record and proceedings in the case of Leonard Forney Burkhart v. William S. Burkhart in this court (55631) and in the Supreme Court; whereupon plaintiff renewed its motion for a final decree. (Appellant contends here that plaintiff did not prove its bill by the introduction of evidence. That was not necessary. Both plaintiff's case and defendant's defense depended upon the record in the case referred to. Its introduction by the defendant made it unnecessary for the plaintiff to introduce it. Furthermore, the trial court might be presumed to be familiar with its own records.)

The court held that the final decree of June 10, 1941, in the above mentioned case, was entered without personal service of process; that the defendant William S. Burkhart did not voluntarily appear in such cause, and no property belonging to him was seized, attached or sequestered prior to the entry of the decree so as to give the court jurisdiction in the premises, (which holdings are sustained by the record), and that therefore the court never acquired jurisdiction to enter a personal judgment against said defendant. The court adjudged said decree of June 10, 1941, to be utterly null, void and of no effect whatever, except in so far as it may have dissolved the bonds of matrimony between the parties, "which question has become moot by the death of both of them," and the defendant executrix, her agents and attorneys, were permanently enjoined and restrained from attempting to enforce said final decree in any wise, and particularly from prosecuting any suits or actions thereon in the courts of Ohio or elsewhere.

It appears from this record that, regardless of whether or

not William S. Burkhart was a resident of Florida, or of Ohio, he was never personally served with process, and the only service by publication which was made against him was in the form applicable to service by publication upon non-residents. Furthermore, we held, as above shown, that his special appearance and motion to quash and dismiss did not amount to a general appearance. Nor was there any seizure or attachment or sequestration of any property of the defendant Burkhart, such as would authorize a personal judgment against him, except as hereinafter discussed, prior to the entry of the decree of June 10, 1941, which the chancellor below annulled, except in so far as said decree dissolved the bonds of matrimony between the parties; the chancellor holding that the trial court, on this record, had never acquired jurisdiction to enter a personal judgment of any kind against the defendant.

Appellant contends that when Mr. Burkhart filed in this court his petition for the writ of prohibition, above referred to, he subjected himself personally to the jurisdiction of the trial court. We hold this contention to be erroneous. Speight v. Horne, 101 Fla. 101, 133 So. 574; Neel v. Love, 110 Fla. 91, 148 So. 208; State v. Adams, 148 Fla. 426, 4 So. 2nd, 457; Ake v. Chancey, 152 Fla. 677, 13 So. 2nd, 6.

Counsel for appellee contend that the decree in the instant case is sustained by the leading case of Pennoyer v. Neff, 95 U.S. 714, 24 L. ed., 565, a case which has been frequently cited and followed by this court, and also by Pennington v. Fourth National Bank, 243, U.S. 269, 61 L. ed. 713. In the latter case the former is cited with approval. Both cases, as the writer understands them, hold that mere substituted service by publication against a defendant furnishes no legal ground for a judgment in personam, but that where a nonresident defendant has property within the borders of the state in which the suit is instituted, and substituted service by publication is had, and such property is attached or seized at the commencement of the proceedings, the judgment or decree can be satisfied out of such property. The last cited case held that the payment of alimony by a non-resident husband could be enforced in that way. Justice Brandeis, writing the court's opinion said: "The only essentials to the exercise

of the State's power are the presence of the *res* within its borders, its seizure at the commencement of the proceedings and the opportunity of the owner to be heard. Where such essentials exist, a decree for alimony against an absent defendant will be valid under the same circumstances and to the same extent as if the judgment were on a debt—that is—it will be valid not in personam, but as a charge to be satisfied out of the property seized." In that case, the property involved was the husband's deposit in a bank. The further holding was that the jurisdiction of a state over property within its borders extended to intangible as well as tangible property, including bank deposits. See also 17 Am. Jur., 422, 426, 428, 580.

In my former opinion filed in this case on July 20, 1945, after stating in substance the decree here appealed from, annulling the decree of June 10, 1941, I said:

"The writer would be inclined to agree with this ruling were it not for the opinion and judgment of this court in Burkhart v. Circuit Court of Eleventh Judicial Circuit, 146 Fla. 457, 1 So. 2nd 872. In that case this court was asked to prohibit the sale of certain property located in Dade County, Florida, which was alleged to be the property of the defendant Burkhart, and which had been levied on for the purpose of satisfying the decree of June 10, 1941, for alimony, attorneys' fees, and costs. In its opinion in the prohibition case this court held, in effect, that although the challenged decree did not constitute a personal judgment which would be satisfied out of property of the defendant, wherever situate, it did have efficacy as a judgment quasi in rem that could be satisfied out of such property of the defendant as was then located within the jurisdiction of the trial court. Although the writer dissented from the conclusion reached—being of the view that under the facts of the case neither a judgment in personam or quasi in rem was authorized—the opinion became the opinion of the court and fixed the status of the order of June 10, 1945."

In stating in my former opinion that the property referred to in the prohibition proceedings had been levied on "for the

purpose of satisfying the decree of June 10, 1941, for alimony, attorney's fees and costs," this writer fell into egregious error. The opinion of this court in the prohibition case shows that said proceeding was brought by Burkhart to stay further action by the Circuit Court to enforce two orders: one rendered December 4, 1940, for attorney's fees, for which issuance of execution had been directed, and temporary alimony; and the other, rendered January 3, 1941, which entered judgment for such alimony then unpaid and directed the issuance of execution therefor. See 146 Fla. 457, 1 So. 2nd 872. These orders were issued before the decree of June 10, 1941, was rendered, but were ancillary to the suit in which that decree was entered, and the petition to this court to issue writ of prohibition to stop the execution of these two orders was denied March 11, 1941, likewise before the final decree of June 10, 1941, here under attack, was rendered. Presumably, and very likely, these two orders were satisfied out of the defendant's property in Dade County before the decree of June 10, 1941, was rendered. But the opinion and decision of this court in the prohibition proceedings held that the Circuit Court, in the divorce proceedings, Burkhart v. Burkhart, had the power and jurisdiction to grant a divorce decree and to enter orders for the payment of alimony and to award counsel fees, and that there was no usurpation of jurisdiction in ordering sale of the property of the defendant located within the jurisdiction of the court for non-payment of alimony based on constructive service. The cases of Pennoyer v. Neff, supra, and Pennington v. Fourth National Bank supra, were quoted from and discussed in the opinion of this court, but the court held that the orders or judgments challenged, based though they were on constructive service, were judgments *in rem* on the defendant's property "situated within the jurisdiction of the court." While this writer dissented, I think the rule of "the law of the case" applies, and that the holding of the court in said prohibition proceedings, in so far as alimony, court costs and attorney's fees were concerned, should have been followed in all subsequent proceedings relating to this same case, including the final decree of June 10, 1941, the money judgment portions of which should have been limited to satis-

faction out of the "defendant's property situated within the jurisdiction of the trial court."

In the light of the opinion and decision in the prohibition case, above referred to, which had become "the law of the case," I am of the opinion that the decree of the chancellor, here under review, is too broad. In addition to that part of the decree of June 10, 1941, which dissolved the bonds of matrimony existing between the parties, which the chancellor in the decree now under review left standing, I am of the opinion that under our former decisions certain other portions of said final decree should not have been disturbed, towit: that part of the decree ratifying and confirming the decree pro confesso; that part of the decree confirming the special master's report; that part of the decree providing for the payment by the defendant of solicitor's fees and allowing permanent alimony (which of course meant during the life of the plaintiff); and also that part of the decree providing for the payment of a special master's fee of $500.00 and $18.00 for the expense of reporting the testimony, and the court costs is so far as they were properly taxed against the defendant. But that part of the decree awarding a judgment against the defendant Burkhart in the sum of $31,430.00 together with $10,940.00 of interest, making a total of $42,370.00, was properly held null and void in the decree here under review, for several reasons, one of them being that this judgment, to enforce the payment of an alleged debt for moneys advanced, was not within the issues made by the pleadings, and the other was that the court had never acquired personal jurisdiction of the defendant such as would authorize entry of a personal judgment based on any such claim, either under the weight of authority, or our opinion and decision in 146 Fla. 457, 1 So. 2nd 872. The same might be said as to item 9 of the decree holding that a certain Pontiac automobile registered in the name of the defendant was the personal and private property of the plaintiff. However, there may have been some basis in the case for determining this question which we have not been able to discover, and as no particular point is made on this 9th paragraph of said final decree, we think the same might well have been left in status quo. In brief, in so far as

the decree of June 10, 1941, allowed alimony, attorneys fees and costs, we must hold in the light of our decisions as reported in 146 Fla. 457, and 1 So. 2nd 872, and also our decision as reported in 144 Fla. 168, 197 So. 73, that said decree of June 10, 1941 was a valid decree and that the decree of the court below, here appealed from, rendered June 19, 1944, holding that said decree of June 10, 1941 was utterly void for all purposes, except the severance of the bonds of matrimony, was too broad and must be reversed.

Therefore, on this rehearing, the decree appealed from is affirmed in part and reversed in part and the cause is remanded for the entry of a decree in conformity with this opinion.

BUFORD, J., concurs.

CHAPMAN, C. J., and TERRELL, J., concurs in conclusion.

THOMAS, J.:

I think the opinion should be affirmed outright for the reasons given in my opinion filed 20 July, 1945.

ADAMS and SEBRING, JJ., concur.